IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THARON B. HILL,<br><br>        Petitioner,<br><br>  v.<br><br>CALIFORNIA BOARD OF PRISON TERMS,<br><br>        Respondent. | No. C 04-4282 MMC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

      On October 8, 2004, petitioner Tharon B. Hill, a California prisoner proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision by the Board of Prison Terms ("Board") denying him parole in 2003. In response to the Court's order to show cause why the petition should not be granted, respondent filed a motion to dismiss the petition as unexhausted. The Court denied the motion to dismiss, and again ordered respondent to show cause why the petition should not be granted. Respondent thereafter filed an answer accompanied by a memorandum and exhibits, and petitioner filed a traverse. Having read and considered the parties' respective submissions, the Court rules as follows.

## BACKGROUND

      In 1988, in Butte County Superior Court, petitioner was convicted, of conspiracy to commit first degree murder, and was sentenced to twenty-five years to life in state prison.

On March 5, 2003, petitioner appeared before the Board for his initial parole suitability hearing. At the hearing, the Board relied upon the statement of facts from the appellate decision in petitioner's criminal case to establish the facts of petitioner's commitment offense. (See Answer Ex. B at 9-10.) The Court includes the statement of facts from the appellate decision here:

> In early 1987, defendant came to Chico to live near his estranged wife, Vicky Hill. Defendant wanted to reconcile with Vicky or failing that, to have her killed. On April 20, 1987, Vicky and defendant had a violent argument. Shortly thereafter, Dalton Moss sold defendant six or seven sticks of dynamite, several blasting caps and fuse cord. Defendant planned to dynamite Vicky's truck or trailer home. Defendant's daughter, Shanna Lopes, recommended John Keefe to defendant to carry out his plan. In early May 1987, Keefe agreed for the sum of $1,000 to be paid by defendant to dynamite Vicky's trailer home while Vicky was inside. Defendant gave Keefe some dynamite, blasting caps and fuse cord. Subsequently, Keefe decided not to blow up Vicky's trailer home, but told defendant he would dynamite her truck for the same $1,000 fee. On May 29, 1987, Keefe threw dynamite near Vicky's unoccupied truck, where it exploded.
>
> Defendant still wanted Vicky killed. Dalton Moss delivered four more sticks of dynamite to Lopes for defendant. Lopes arranged for Mike Hoskison to dynamite Vicky's trailer home or truck. On June 25, 1987, Vicky shot Hoskison as he attempted to light dynamite just outside her trailer home. Hoskison ran off a short distance where he collapsed. He died soon thereafter.
>
> Defendant denied any involvement in the May 29 bombing or the June 25 bombing attempt. Defendant specifically denied an agreement with Keefe to dynamite Vicky's trailer home in order to kill her.

See People v. Hill, 3 Cal. App. 4th 16, 22-23 (1992) (footnote omitted); see also Answer Ex. B at 9-10.

At the conclusion of petitioner's hearing, the Board determined petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison at this time." (See Answer Ex. B at 57:10-13). The Board denied petitioner parole for the next two years.

Petitioner filed a petition for a writ of habeas corpus in the Superior Court, challenging the Board's decision. The Superior Court denied the petition on procedural grounds. (See Answer Ex. J.) Petitioner next filed a petition for a writ of habeas corpus in the California Court of Appeal, which summarily denied the petition. (See Answer Ex. K.)

1  Petitioner then filed a petition for review in the California Supreme Court, which denied
2  review.  (See Answer Ex. L.)  Petitioner thereafter filed the instant petition, in which he
3  claims the Board violated his federal constitutional right to due process by denying him
4  parole without sufficient evidence to support its decision that his release would pose an
5  unreasonable risk to public safety.

**DISCUSSION**

**A.     Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a habeas petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  See 28 U.S.C. § 2254(d).

When it is clear, however, that a claim properly raised in state court was not adjudicated on the merits in state court, the deferential review standard of § 2254(d) does not apply; rather, the federal court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160, 1167-68 (9th Cir. 2002) (holding state court procedural bar did not prevent federal habeas corpus review where petitioner properly presented claim to state court; applying de novo standard of review).

Here, the Court previously ruled on respondent's motion to dismiss the petition as unexhausted, and found petitioner's claim had not been adjudicated on the merits in state court because the Superior Court denied the claim based on a procedural bar against vague and conclusory habeas claims, and the California Supreme Court, in denying review, did not silently disregard the bar and consider the merits of the claim.[1]  (See Order Denying Motion

---

[1] The Superior Court denied the claim with citations to In re Swain, 34 Cal.2d 300 (1949), and In re Patton, 178 Cal. 629 (1918).

3

1  to Dismiss; filed September 7, 2005, at 3-4.)  The Court further found petitioner's claim

2  herein was not barred as a result of the state procedural bar, because petitioner had properly

3  presented his claim to the California Supreme Court for review.  (See id. at 4-5.)

4  Accordingly, because petitioner's claim was properly raised but not adjudicated on the merits

5  in state court, the Court will review the claim de novo.

6  **B.    Subject Matter Jurisdiction**

7       Respondent asserts the instant petition should be dismissed for lack of subject matter

8  jurisdiction, because petitioner has no constitutionally protected liberty interest in parole.

9       While there is "no constitutional or inherent right of a convicted person to be

10 conditionally released before the expiration of a valid sentence," Greenholtz v. Inmates of

11 Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if

12 it uses mandatory language, may create a presumption that parole release will be granted

13 when, or unless, certain designated findings are made, and thereby give rise to a

14 constitutionally protected liberty interest.  See Board of Pardons v. Allen, 482 U.S. 369, 376-

15 78 (1987) (finding Montana parole statute creates due process liberty interest in release on

16 parole); Greenholtz, 442 U.S. at 11-12 (finding Nebraska parole statute creates due process

17 liberty interest in release on parole).  In such a case, a prisoner gains a legitimate expectation

18 in parole that cannot be denied without adequate procedural due process protections.  See

19 Allen, 482 U.S. at 373-81; Greenholtz, 442 U.S. at 11-16.  In McQuillion v. Duncan, 306

20 F.3d 895 (9th Cir. 2002), the Ninth Circuit held that, under the clearly established framework

21 of Greenholtz and Allen, "California's parole scheme gives rise to a cognizable liberty

22 interest in release on parole."  See id. at 902.

23       Relying on the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995),

24 respondent argues that the Ninth Circuit improperly applied Greenholtz and Allen to find a

25 protected liberty interest in McQuillion.  Respondent's argument is without merit.  In Sandin,

26 the Supreme Court criticized the "mandatory language" methodology used in Greenholtz and

27 Allen, and held that, while states may under certain circumstances create liberty interests that

28 are protected by the Due Process Clause, "these interests will be generally limited to freedom

from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. In McQuillion, the Ninth Circuit squarely addressed, and rejected, the contention that Sandin applies to parole regulations. See McQuillion, 306 F.3d at 902-04. In particular, the Ninth Circuit held: "It is clear from the [Supreme] Court's framing of the problem in Sandin . . . that Sandin's holding was limited to internal prison disciplinary regulations." Id. at 904; see also Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1127 n.3 (9th Cir. 2006) ("Despite the government's argument that [Sandin] eliminated the 'mandatory language' approach of Greenholtz and Allen, the Supreme Court did not so hold and this court has consistently rejected this argument.").

Respondent further argues that the California Supreme Court's decision in In re Dannenberg, 34 Cal. 4th 1061 (2005), established that California's parole regulations do not create a protected liberty interest. The Ninth Circuit rejected this argument in Sass, finding Dannenberg addressed only "the narrow question whether the Board must engage in a comparative proportionality analysis in setting parole dates before determining an inmate's individual suitability for parole." 461 F.3d at 1128. Consequently, the Ninth Circuit concluded, "Dannenberg does not explicitly or implicitly hold that there is no constitutionally protected liberty interest in parole," id., and "California inmates continue to have a liberty interest in parole after [Dannenberg]," id. at 1125.

Accordingly, petitioner was entitled to the protections of due process at his parole suitability hearing, and the Court has subject matter jurisdiction over the petition.

**C.     Petitioner's Claim**

Petitioner contends that the Board violated his right to due process by denying him parole, because the Board's decision was not supported by some evidence.

According to "clearly-established" federal law, a parole board's decision must be supported by "some evidence" to satisfy due process. See id. at 1128-29. "[The] some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" Id. at

1129 (quoting Superintendent v. Hill, 472 U.S. 445, 457 (1985)).  "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.'"  Id. at 1128 (quoting Hill, 472 U.S. at 455-56.)  "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the Board.  See id. (quoting Hill, 472 U.S. at 455-56.)

When assessing whether a state parole board's suitability determination was supported by "some evidence," the Court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state.  Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007).  In California, the criteria for determining whether a life prisoner is suitable for parole are set forth at title 15, § 2402, of the California Code of Regulations.  The opening paragraph of § 2402(a) states: "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  See Cal. Code Regs. tit. 15, § 2402(a).  In determining suitability for parole, the Board must consider "all relevant, reliable information" available to it.  See id. § 2402(b).

Circumstances tending to indicate unsuitability for parole include whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner."  Id. § 2402(c).  Factors to be considered in determining whether this circumstance is present include: the number of victims; whether "[t]he offense was carried out in a dispassionate and calculated manner"; whether the victim was "abused, defiled or mutilated during or after the offense"; whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering"; and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense."  Id.  Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental health problems related to the offense, and serious misconduct in prison or jail.  See id.

Circumstances tending to support a finding of suitability for parole include: no

1  juvenile record; a stable social history; signs of remorse; the crime was committed as a result
2  of significant stress in the prisoner's life; a lack of criminal history; a reduced possibility of
3  recidivism due to the prisoner's present age; the prisoner has made realistic plans for release
4  or has developed marketable skills that can be put to use upon release; and the prisoner's
5  institutional activities indicate an enhanced ability to function within the law upon release.
6  See id. § 2402(d).

7        In the instant case, the Board's denial of parole was based in part on findings that
8  petitioner posed an unreasonable risk of danger to public safety because "the offense was
9  carried out in an especially cruel and callous manner." (See Cal. Code Regs. tit. 15,
10 § 2402(c)(1); Answer Ex. B at 57:14-15.) Specifically, the Board found the crime was
11 carried out in a dispassionate and calculated manner, and that the motive for the crime was
12 inexplicable and very trivial in relation to the offense. (See id. at 57:24-26, 58:9-12). The
13 Board had "some evidence" to support its findings, based on evidence before it which
14 showed: that petitioner conspired to murder his ex-wife by blowing her up because he was
15 angry that she took his money; he planned to carry out the crime by using explosives; he
16 bought the materials for the crime and paid a co-conspirator one thousand dollars to carry it
17 out; he was not deterred from making a second attempt to carry out the crime after the first
18 attempt failed; and the amount of explosives used in the second attempt was enough to blow
19 up several nearby trailer homes in addition to the one occupied by his ex-wife. (See Answer
20 Ex. B at 9:4-10:26, 51:3-18, 57:19-58:19, 61:16-62:9.)

21       The Board also considered petitioner's previous record of violence, see Cal. Code
22 Regs. tit. 15, § 2402(c)(2), and his social history, see id. § 2402(c)(3), and based its denial of
23 parole in part on its findings that petitioner had a history of assaultive behavior, and of
24 unstable, tumultuous relationships with others. (See Answer Ex. B at 58:19-22.) Based on
25 evidence that petitioner had twice been arrested for assault and battery and once for
26 disturbing the peace and for petit larceny; that he had been married four times and that three
27 of those marriages had failed; and that he had admitted to physical violence in his second and
28 third marriages, there was "some evidence" to support the Board's findings. (See id. at

1  51:22-52:5, 59:1-4, 62:16-18; see also Ex. F at 2.)

2        The Board considered petitioner's mental state, see Cal. Code Regs. tit. 15, § 2402(b),
3  and found he needed to participate in additional self-help programs and therapy, (see Answer
4  Ex. B at 59:8-10, 60:12-21, 63:6-9), and that, "[u]ntil progress is made, the prisoner
5  continues to be unpredictable and a threat to others." (See id. at 60:18-19.) In support of its
6  finding, the Board relied on the 2003 Mental Health Evaluation Report from the prison
7  psychologist, Marion Chiurazzi, which report was not wholly supportive of petitioner's
8  release. (See id. at 59:17, 62:18-22.) The Board noted that while the report found
9  petitioner's risk of recidivism to be low, it also found he continued to show signs of impaired
10 functioning in close relationships and impaired insight into the destructive nature of his past
11 relationships. (See id. at 38: see also Ex. F at 5-6.) A critical point of consideration for the
12 Board was the report's prognosis that any of petitioner's future relationships would likely
13 show signs of stress related to petitioner's impaired functioning and insight, and that "any
14 potential risk for violence, even if small, is related to this." (See Answer Ex. B at 38:17:20;
15 see also Ex. F at 6.) The Board voiced its concern that the possibility of future violence by
16 petitioner would persist until he gained insight into what had occurred. (See Answer Ex. B at
17 38:21-24.) The Board also noted that petitioner's counselor had concluded petitioner would
18 continue to pose an unreasonable degree of threat to the public if released. (See Answer Ex.
19 B at 60:8-11; see also Ex. G at 7-8.) The reports prepared by the prison psychologist and
20 petitioner's counselor constituted "some evidence" to support the Board's finding that
21 petitioner needed additional self-help programming and therapy before he could be found
22 suitable for parole.

23       The Board also considered whether petitioner had realistic release plans, see Cal.
24 Code regs. tit. 15, § 2402(d)(8); the Board found he did not, because he did not have a viable
25 residential plan or employment plan, and had not developed marketable skills that could be
26 put to use upon release. (See Answer Ex. B at 59:17-22.) Based on evidence that petitioner
27 had made parole plans for Utah, but had not done so for his last county of legal residence or
28 the county of commitment (both of which were in California), the Board's finding that

8

1  petitioner did not have a viable residential plan was supported by "some evidence."  (See id.
2  at 45:2-47:10.)  The Board's findings that petitioner did not have an acceptable employment
3  plan and had not developed marketable skills that could be put to use upon release also were
4  supported by "some evidence"; the Board had previously told petitioner that he needed to
5  upgrade vocationally because his skills in general contracting might not be sufficient to
6  provide him with employment opportunities upon his release, but since that time petitioner
7  had completed only part of a vocational drafting program.  (See id. at 24:5-15, 44:6-7; see
8  also Ex. E at 4.)  Further, petitioner had not researched whether he would be entitled to
9  Social Security benefits when he was paroled, and had not made other employment plans.
10 (See id. at 47:11-22.)

11        The Board also noted that the District Attorney's Office opposed petitioner's release
12 on parole.  See Cal. Penal Code § 3046(c) (providing Board shall consider all statements and
13 recommendations submitted by judge, district attorney, sheriff, and other persons interested
14 in granting or denying of parole.)  (See Answer Ex. B at 50:26-53:7, 60:2-5.)

15        Petitioner contends the Board's continued reliance on his prior behavior and the
16 nature of the commitment offense violates due process.  (See Pet. at 6.)  The Ninth Circuit,
17 however, has held that a denial of parole based on an unchanging factor, such as the gravity
18 of the offense, may constitute "some evidence" to justify a denial of parole.  See Irons, 505
19 F. 3d at 853 (holding Board's sole reliance on commitment offense in denying parole
20 comported with due process); Sass, 461 F.3d at 1129 (holding Board's reliance "on the
21 gravity of [petitioner's] convicted offenses" in combination with his prior offenses
22 "constitute[d] some evidence to support the Board's determination"); Biggs v. Terhune, 334
23 F.3d 910, 916 (9th Cir. 2003) ("[T]he parole board's sole supportable reliance on the gravity
24 of the offense and conduct prior to imprisonment to justify denial of parole can be initially
25 justified as fulfilling the requirements set forth by state law.")  Although the Ninth Circuit, in
26 Biggs, stated that "[a] continued reliance in the future on an unchanging factor . . . runs
27 contrary to the rehabilitative goals espoused by the prison system and could result in a due
28 process violation," see Biggs, 334 F.3d at 917, this exception has never been applied by the

9

1  Ninth Circuit.  Most recently, in Irons, the Ninth Circuit noted that it has never found a
2  violation of due process where the denial of parole was based solely on the gravity of the
3  offense, and the prisoner had not yet served the minimum number of years required by his
4  sentence.  See Irons, 505 F. 3d at 853.  In the instant case, petitioner had served only fifteen
5  years of his twenty-five years-to-life sentence when the Board denied him parole at his initial
6  parole suitability hearing in 2003.

7  Lastly, other circumstances presented in the instant action are not materially
8  distinguishable from those found not to warrant the granting of a habeas petition in Irons,
9  Sass, and Biggs.  Here, petitioner received no disciplinary infractions during his period of
10 incarceration and had positive work reports, but had only limited participation in educational,
11 vocational, and self-help programs, and no viable plans for his release.  The petitioner in
12 Irons was "extremely industrious" in prison, maintained "average to exceptional job
13 performance in every position he ha[d] occupied," and "received certificates of completion in
14 several vocational training programs."  See Irons, 505 F. 3d at 849.  Likewise, in Sass, the
15 petitioner displayed "exemplary conduct in prison," had "detailed plans" for his release,
16 received vocational training and certificates, and "had taken college classes, for which he
17 received all A's except for one B minus."  See Sass, 461 F.3d at 1136 n.16 (Reinhardt,
18 dissenting).  Similarly, the petitioner in Biggs was a "model inmate," received praise from
19 his supervisors for his "skills and efforts," received certification from the FAA in two
20 aviation programs, and earned Associate's, Bachelor's and Masters in Business
21 Administration degrees.  See Biggs, 334 F.3d at 912.  The Ninth Circuit nonetheless found
22 the petitioners' accomplishments in Irons, Sass, and Biggs insufficient to require a grant of
23 parole.  See Irons, 505 F. 3d at 853; Sass, 461 F.3d at 1129; Biggs, 334 F.3d at 916.

24 In sum, the Court finds the Board had "some evidence" to support its decision to deny
25 petitioner parole.  See Sass, 461 F.3d at 1129.  Accordingly, the petition for a writ of a
26 habeas corpus will be denied.

27 **CONCLUSION**

28 For the reasons set forth above, the petition for a writ of a habeas corpus is hereby

1  DENIED.

2  The Clerk shall enter judgment and close the file.

3  **IT IS SO ORDERED.**

4  DATED: December 10, 2007

_____
MAXINE M. CHESNEY
United States District Judge